IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

ANGÉLICA FUENTES TÉLLEZ

      **Plaintiff,**

      **v.**

**JORGE CARLOS VERGARA
MADRIGAL and JAVIER COELLO-
TREJO**

      **Defendants.**

Civil Action No.  3:15-cv-00304

## COMPLAINT

Plaintiff Angélica Fuentes Téllez ("Fuentes") brings this action against Jorge Carlos

Vergara Madrigal ("Vergara") and Javier Coello-Trejo ("Coello-Trejo"), and alleges as follows:

## INTRODUCTION

This is an action for damages for violations of 18 U.S.C. §§ 1962(b), (c), and (d).

Vergara took control of, and operates, two legitimate enterprises, Grupo Omnilife and Omnilife

USA, through a pattern of racketeering activity, intimidation, and coercion, including wire fraud,

mail fraud, and other corrupt practices.

Fuentes and Vergara were married in 2008.  They have two minor children.  Fuentes and

Vergara jointly own Grupo Omnilife S.A. de C.V. ("Grupo Omnilife"), a holding company based

in Zapopan, Jalisco, Mexico that owns and operates an international network of vitamin and

mineral manufacturers and distributors operating in 18 countries, including in the United States.

Omnilife USA, Inc. ("Omnilife USA"), a Texas corporation, runs Grupo Omnilife's operations

in the United States.

From 2007 to 2015, Fuentes, a successful and well-known corporate executive and philanthropist, served as Chief Executive Officer ("CEO") of Grupo Omnilife and its worldwide subsidiaries.  In March 2015, Vergara learned that Fuentes had plans to divorce him.  Angry, and concerned that Fuentes would liquidate her shares of Grupo Omnilife – worth hundreds of millions of dollars – Vergara designed a scheme involving acts of coercion and intimidation directed at Fuentes, with the ultimate goal of taking Fuentes's shares in Grupo Omnilife, and keeping the shares for himself.  Vergara intended to coerce Fuentes into relinquishing her shares in Grupo Omnilife by unilaterally ousting her from Grupo Omnilife, taking complete control of Grupo Omnilife and all of its subsidiaries, including Omnilife USA.

Vergara's plan culminated in a purported meeting of the shareholders of Grupo Omnilife in April of 2015.  At that meeting, which was improperly convened without notice to Fuentes, Vergara falsely represented to those present (and later to the public in Mexico and the United States in radio and television broadcasts) that he controlled 100% of Grupo Omnilife and its subsidiaries, including Omnilife USA.  Furthermore, during the meeting, Vergara took unauthorized and unlawful action against Fuentes, including ousting her as CEO of Grupo Omnilife and Omnilife USA.  On multiple occasions, Vergara used the wires and the mail to notify Fuentes in the United States of the unlawful actions taken against her, to vilify Fuentes in the press, and to threaten Fuentes.  Vergara has threatened Fuentes's safety and damaged Fuentes's personal and business reputation with the sole objective of usurping her 49% interest in Grupo Omnilife.

Through this pattern of unlawful behavior, Vergara has gained complete control over Grupo Omnilife, Omnilife USA, and the other subsidiaries.  Vergara, sometimes acting in concert with his attorneys, and has proven that he will stop at nothing to obtain Fuentes's shares.

In the course of his personal vendetta against Fuentes, Vergara has harmed Grupo Omnilife, Omnilife USA and the other Omnilife subsidiaries and has sent them into chaos, without any sound business-related reason for his actions.  Accordingly, Vergara's scheme has not only harmed Fuentes, but also all of the Omnilife entities.

**PARTIES**

1.      Angélica Fuentes Téllez is a Mexican national who currently resides in El Paso, Texas.

2.      Jorge Carlos Vergara Madrigal is a Mexican national who resides in Guadalajara, Mexico.

3.      Javier Coello-Trejo is a Mexican national who currently resides in Mexico City, Mexico.

**JURISDICTION AND VENUE**

4.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 18 U.S.C. § 1964(c) because this claim arises from a violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961 - 1968.

5.      This Court has supplemental jurisdiction over Fuentes's state law claims, Counts IV-VIII, pursuant to 28 U.S.C. § 1367(a) because the state law claims are so related to Fuentes's federal claims that they form part of the same case or controversy.

6.      This Court has personal jurisdiction over Vergara pursuant to 18 U.S.C. § 1965(b) and Tex. Civ. Prac. & Rem. Code § 17.042.  Vergara is the President, controlling shareholder, and director of Omnilife USA, a Texas corporation.  Vergara regularly transacts business in Texas and throughout the United States, and frequently travels to the United States for business and personal reasons.  Vergara maintains bank accounts in the United States at JPMorgan Chase

3

bank and maintains a residence in El Paso, Texas.  Additionally, Vergara committed tortious and otherwise unlawful actions in the state of Texas, utilized a domestic entity (Omnilife USA) to perpetrate a fraud on Fuentes, targeted Fuentes, who resides in the United States, and traveled to the United States to threaten Fuentes in furtherance of his unlawful scheme.

7.     This Court has personal jurisdiction over Coello-Trejo because he committed tortious acts in Texas.  Coello-Trejo defamed Fuentes through radio, television, internet, and written media aimed at, and transmitted to, the United States, including the State of Texas, where Fuentes is living.

8.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to this action occurred in this district.  It is also proper pursuant 18 U.S.C. § 1965(a) because both Omnilife USA and Vergara are found, have an agent, and/or transact their affairs in this district.

## BACKGROUND

9.     Fuentes is a well-known businesswoman and philanthropist.  She was born in El Paso, Texas, but spent her childhood in Juarez, Mexico, where her family ran an important energy business.  She attended the University of Texas at El Paso, and graduated with a degree in Business and Finance.  After graduating, Fuentes worked for her family's energy distribution business.  Fuentes served as CEO of Grupo Imperial Corporativo, a prominent energy company in Mexico, and as CEO of the Mexican Natural Gas Association, and was the first female chair of the Business Energy Network for Asia-Pacific Economic Cooperation Agreement (APEC).

10.     Fuentes currently serves as a board member of the Private Sector Leadership Advisors Council of the UN Women and serves as a global advocate for the United Nations Foundation "Girl Up" program.  She is also on the board of the  Gender Parity Taskforce of the

World Economic Forum.  In that capacity, she works to address gender equality issues in Mexico and Latin America, and to help impoverished communities in Mexico establish economic independence.

11.     Vergara and Fuentes are the co-owners of Grupo Omnilife, the holding company for an international network of manufacturers and distributors of vitamin and mineral supplements (collectively, the "Omnilife Entities").

12.     Grupo Omnilife's wholly-owned subsidiary, Omnilife USA, is the U.S. arm of Grupo Omnilife's operations.

13.     In September 2007, Fuentes became CEO of Grupo Omnilife and the Omnilife Entities, including Omnilife USA.[1]  In that role, Fuentes managed the daily operations of the businesses, negotiated on behalf of the entities,  and, in conjunction with Vergara, made major strategic decisions for the entities.  Vergara's role was principally focused on sales and marketing.

14.     Vergara owns 51% of the shares of Grupo Omnilife.  He is also the President and Chairman of the Board for both Grupo Omnilife and Omnilife USA.  As President and Chairman of the Board, Vergara administers the affairs of Grupo Omnilife and Omnilife USA.

15.     In February 2010, Fuentes purchased shares in Grupo Omnilife.  Presently, Fuentes owns 49% of the shares of Grupo Omnilife.

16.     Fuentes and Vergara were married in 2008.  In March of 2015, Fuentes decided to divorce Vergara.  After learning of Fuentes's plans to divorce him, and out of concern that

---

[1] In February 2015, Fuentes and Vergara executed an Owners' Agreement to provide procedures for the sale of Grupo Omnilife and the Omnilife Entities in the event of Vergara or Fuentes's death or disability.  The Owners' Agreement contains an arbitration clause regarding disputes related to, or arising out of, the Owners' Agreement.  The Owners' Agreement does not address disputes involving fraud.

Fuentes may try to monetize her shares in Grupo Omnilife, Vergara became angry and devised a scheme to wrongfully obtain Fuentes's 49% interest in Grupo Omnilife—including her interest in Omnilife USA.

17.     To effectuate his scheme, Vergara unlawfully removed Fuentes from power at the Omnilife Entities, including Omnilife USA, and locked her out of the entities' affairs so that he could exercise complete control over the entities.

18.     Vergara is suspected of sharing his plan with attorneys, Coello-Trejo and Virgilio Rincon ("Rincon"), and is believed to have asked them to participate in his plan.

19.     On or about April 1, 2015, Vergara and his lawyers, Coello-Trejo and Rincon, began a public media campaign against Fuentes, which continues to this day. They have appeared numerous times on television and radio shows, accusing Fuentes of fraud and misconduct with respect to Grupo Ominilife and the Omnilife Entities, and informing the public that Fuentes had been ousted from Grupo Omnilife and the Omnilife Entities, including Omnilife USA. Many of these television shows and news reports were intentionally transmitted to Texas, where Fuentes is living.

**The April 3, 2015 Shareholders' Meeting**

20.     On April 3, 2015, knowing that Fuentes was away on vacation with her two young daughters, Vergara called a meeting of the shareholders of Grupo Omnilife (the "April 3 Meeting") with the purpose of removing Fuentes as CEO of Grupo Omnilife, and the other Omnilife Entities, and depriving her of her rights and powers as CEO of those entities and as a shareholder of Grupo Omnilife.

21.     Contrary to Grupo Omnilife's bylaws, Omnilife USA's bylaws, and Texas law, Vergara did not provide Fuentes with notice of the April 3 Meeting, and intentionally concealed the meeting from Fuentes.

22.     Grupo Omnilife's bylaws require 100% shareholder consent to effect any of the following corporate actions:

> (a)     To appoint or remove the CEO of Grupo Omnilife and its subsidiaries;
>
> (b)     To determine the structure of the Board of Directors (*i.e.*, a "Sole Administrator" or a three-member board); and
>
> (c)     To appoint or remove Board members, officials, employees, managers, and agents of Grupo Omnilife and its subsidiaries, and to establish their respective duties, obligations, and compensation.

23.     Because Vergara owns 51% of Grupo Omnilife's capital stock, with Fuentes owning the other 49%, Vergara could not remove Fuentes as CEO or take complete control of Grupo Omnilife without Fuentes's approval.  Yet despite this restriction, Vergara ousted Fuentes from the CEO position, and took complete control of the company.

24.     Vergara made knowing misrepresentations and acted under false pretenses at the April 3 Meeting to assume control of Grupo Omnilife and Omnilife USA:

> (a)     Vergara falsely represented that his shares represented 100% of the capital stock with voting rights, when in fact his shares represented only 51% of the capital stock with voting rights.  He made the false representation to oust Fuentes from the Board, deprive her of her income, benefits and preclude her from accessing the company and its books.  Vergara falsely represented that, as a

7

consequence of owning 100% of the capital stock, he was able to take unilateral actions.

(b)      Vergara falsely represented that he was not required to give prior notice of the April 3 Meeting to the other shareholders (*i.e.*, Fuentes), when in fact Grupo Omnilife, Omnilife USA and Texas law require that prior notice of a meeting be given to other shareholders.

(c)      Vergara declared the April 3 Meeting to be validly convened, when in fact Vergara had not observed the formalities necessary to validly convene such a meeting.  Contrary to Grupo Omnilife's by-laws and Mexican law, Vergara did not provide prior notice of the meeting to Fuentes and did not deposit his stock certificates with the appropriate deposit institution prior to the meeting.

(d)      After the April 3 Meeting, Vergara arranged for the purported minutes of the April 3 Meeting to be recorded with the Public Registry of Commerce in Mexico.  Vergara falsely certified to the state that  Felipe de Jesús Morán Atencio was the "Special Representative" of Grupo Omnilife and that a valid meeting of the shareholders of Grupo Omnilife had taken place on April 3, 2015.

25.      Falsely representing that he was the owner of 100% of the capital stock, Vergara, with Rincon's assistance, took the following unauthorized action:

(a)      Vergara removed Fuentes as CEO of Grupo Omnilife and its subsidiaries, appointed a new CEO, and released the new CEO from posting a bond for his term;

(b)      Vergara removed every member of the Board of Directors, replaced the Board of Directors with a "Single Administrator," appointed a Single

Administrator, and released the new Single Administrator from posting a bond for his term;

(c)     Vergara removed every officer on the Board of Administration;

(d)     Vergara removed and replaced every member of the Audit Body, and released the new members of the audit body from posting a bond for their term;

(e)     Vergara removed all administrative employees who he perceived to be aligned with Fuentes;

(f)     Vergara released himself from any liability that he may have incurred in his role as an officer of Grupo Omnilife, and expressly refused to release any other officers or Board members from liability;

(g)     Vergara executed powers of attorney in favor of all the newly appointed officers and employees of Grupo Omnilife and its subsidiaries;

(h)     Vergara retained his personal attorneys to serve as counsel for Grupo Omnilife and its subsidiaries;

(i)     Vergara took official corporate action to prevent the individuals who he removed from being paid for their work the prior year.

26.     In furtherance of the fraud, Vergara and Rincon agreed that the latter would draft minutes of the purported April 3 Meeting to memorialize and validate the action taken against Fuentes, and officially record the minutes with the Mexican Public Registry of Commerce.

**Communications Transmitted Into the United States From Mexico**

27.     After the April 3 Meeting, Vergara and his lawyers leaked the minutes of the April 3 Meeting to the press.  In an April 3rd interview with Univision, Vergara stated that Fuentes has been ousted from Grupo Omnilife and the Omnilife Entities because of fraud and

9

other unlawful conduct.  The interview was broadcasted into the United States and into Texas.
In numerous radio and television interviews, Vergara's lawyers, Coello-Trejo and Rincon,
accused Fuentes of orchestrating a scheme to steal over 400 million dollars from Grupo Omnilife
and to transfer the money to Swiss Bank accounts.  These radio interviews became the subject of
social media, press releases, audio clips and quotes, which were transmitted into the United
States and Texas.  Coello-Trejo repeatedly made these false statements at Vergara's instruction,
and purposely directed his statements to Texas where Fuentes resides.

28.    As a result of Vergara's actions, the minutes of the April 3 Meeting were sent to
Fuentes while she was in the United States to inform her of the actions that Vergara had taken
against her and to demonstrate his control over the entities.

29.    After assuming complete control of Grupo Omnilife, Omnilife USA and the other
Omnilife Entities, Vergara continued to take unauthorized action against Fuentes:

(a)    Vergara revoked Fuentes's authority with respect to corporate credit cards
and corporate bank accounts;

(b)    Vergara removed Fuentes's security detail consisting of armed guards and
an armored vehicle, which had been provided to Fuentes because of the dangerous
conditions in Mexico, and because Fuentes's physical safety was at risk as a result
of her corporate role and economic status;

(c)    Vergara blocked Fuentes's access to the offices of Grupo Omnilife,
Omnilife USA and the other subsidiaries, thereby preventing Fuentes from
accessing the entities' books and records, her email, her electronic files, and her
personal effects.

30.     As a result of Vergara's actions or instructions, several phone calls were made to Fuentes in the United States to inform her that her rights and privileges had been revoked.  For example, in early April 2015, Fuentes received phone calls from Vergara's representatives to inform her that her security detail had been removed and that she was not permitted in or near the Omnilife Entities, including Omnilife USA.

31.     As a result of Vergara's actions or instructions, between April and August 2015, transmissions were made to the relevant financial institutions and credit card servicing companies in the United States to remove Fuentes as a signatory to certain bank accounts and to remove her as an authorized user of credit cards.

**Vergara's Express Threats**

32.     On April 8, 2015, Fuentes's former attorney, Ismael Reyes Retana Tello ("Reyes") received a text message from Vergara's lawyer requesting that Reyes meet with Vergara at Vergara's home to discuss a potential settlement of Vergara and Fuentes's commercial disputes.  At that meeting, Vergara threatened that, if Fuentes refused to relinquish her shares in Grupo Omnilife , Vergara would destroy her career, reputation, and public image, and even take her children away from her.  Vergara also warned Reyes that he had organized a protest against Fuentes to demonstrate his intention and ability to "destroy" Fuentes.  Vergara asked Reyes to convey the message to Fuentes, who Vergara knew was vacationing with their daughters in the United States.  On or about April 9, 2015, Reyes communicated Vergara's threat telephonically to Fuentes who was in the United States.

33.     On or about April 9, 2015, over 1500 people identifying themselves as Grupo Omnilife employees, protested in front of Reyes's law office.  The protestors were led by Vergara's cousin and held signs criticizing Fuentes and her attorneys.

34.    In early July 2015, Vergara texted Fuentes (who was in the United States) to set-up a personal meeting with her.  On July 9, 2015, Vergara met with Fuentes in her El Paso home.  At that July 9, 2015 meeting, Vergara threatened Fuentes that, if Fuentes did not turn over her stock to him, he would put her in jail, destroy her reputation, and even take her children away.

35.    In August 2015, Coello-Trejo, working in conjunction with Vergara, sent a letter to Fuentes's El Paso home to notify Fuentes that her authority with respect to certain bank accounts, including an account at JPMorgan Chase bank, had been revoked.[2]

### COUNT I
### CIVIL RICO 18 U.S.C. § 1962(b) (AGAINST VERGARA)

36.    Fuentes re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 35 as if fully set forth herein.

37.    Pursuant to 18 U.S.C. § 1961(4), as corporations and legal entities, Grupo Omnilife and Omnilife USA are enterprises.

38.    Grupo Omnilife and Omnilife USA are engaged in, and their activities affect, interstate commerce.  Grupo Omnilife's wholly-owned subsidiaries, including Omnilife USA, conduct business throughout the United States.  And Omnilife USA operates multiple distribution centers throughout the United States and is headquartered in El Paso, Texas.

39.    Vergara acquired an interest in, and control of, Grupo Omnilife and Omnilife USA through a pattern of racketeering activity.  Vergara's numerous predicate offenses include multiple acts of wire fraud under 18 U.S.C. § 1343 and mail fraud under 18 U.S.C. § 1341:

---

[2] Coello-Trejo and Jorge Vergara knew Fuentes was represented by the counsel in the United States.  Yet, in an attempt to further intimidate Fuentes, Coello-Trejo deliberately sent the letter to Fuentes's home rather than to her counsel.

(a)     Vergara transmitted, or caused to be transmitted, the following communications by means of wire and radio communications in interstate and/or foreign commerce for the purpose of executing his scheme:

    (i)     Multiple radio and television broadcasts since early April 2015;

    (ii)     Transmission of the minutes of the April 3 Meeting to the press;

    (iii)     Transmission of the minutes of the April 3 Meeting to Fuentes in the United States;

    (iv)     Phone call from Reyes to Fuentes on or about April 9, 2015 communicating Vergara's threats;

    (v)     Phone call to Fuentes in early April 2015 notifying her that her security detail had been removed;

    (vi)     Phone call to Fuentes in early April notifying her that she was no longer permitted to enter the Omnilife Entities' offices;[3]

    (vii)     Text  message from Vergara to Fuentes to arrange a meeting in El Paso on July 9, 2015;

    (viii)     Transmissions to financial institutions in the United States between April and August 2015.

(b)     Vergara used the mail for the purpose of executing, or attempting to execute, his scheme:

    (i)     Pursuant to Vergara's instruction, Coello-Trejo sent a letter to Fuentes's home in El Paso to notify her that her power of attorney with

---

[3] Fuentes also learned of this information through statements made by Vergara and Coello-Trejo to the media regarding Fuentes's ouster from Omnilife.

respect to certain bank accounts at JPMorgan Chase bank had been

revoked.

40.     The predicate offenses are related to each other and to the affairs of the enterprise. The predicate offenses were directed toward the same goal of acquiring and controlling Fuentes's  shares and economic interest in Grupo Omnilife and Omnilife USA, and of exercising complete control over the two enterprises.  The predicate offenses were committed by Vergara or his agents and were directed at Fuentes.

41.     Vergara's past actions, express threats of continuing unlawful activities, and unilateral control over Grupo Omnilife and Omnilife USA, give rise to an inference that Vergara is reasonably likely to engage in similar unlawful conduct in the future.[4]  Accordingly, there is a reasonable likelihood that Vergara will commit a violation of 18 U.S.C. § 1961 in the future.

42.     As a direct and proximate result of Vergara's violations of 18 U.S.C. § 1961, *et seq.*, and his scheme to defraud Fuentes, Fuentes has sustained damages.  Fuentes's damages include, but are not limited to the following:

(a)     Financial loss resulting from Fuentes's wrongful removal as CEO of Omnilife USA and Grupo Omnilife and the interference with her rights as shareholder thereof, including loss of income, dividends and distributions, decrease in the value of the business as a result of Vergara's actions, and the loss resulting from the deprivation of the other benefits attendant her position, such as a security detail.

_____

[4] Most recently, Vergara and Coello-Trejo have been quoted in the media as stating that unless Fuentes settles with Vergara, she will be incarcerated in Mexico.

(b)      Reputational harm resulting from Vergara's false statements, including the

reasons purportedly underlying Fuentes's removal as CEO of Omnilife USA and

Grupo Omnilife.

WHEREFORE, Fuentes requests treble damages and her attorney's fees and costs as

provided in 18 U.S.C. § 1964(c).

**COUNT II**
**CIVIL RICO 18 U.S.C. § 1962(c) (AGAINST VERGARA)**

43.      Fuentes re-alleges and incorporates by reference the allegations set forth in

paragraphs 1 through 35 as if fully set forth herein.

44.      Pursuant to 18 U.S.C. § 1961(4), as corporations and legal entities, Grupo

Omnilife and Omnilife USA are enterprises.

45.      Grupo Omnilife and Omnilife USA are engaged in, and their activities affect,

interstate commerce.  Grupo Omnilife's wholly-owned subsidiaries, including Omnilife USA,

conduct business throughout the United States.  And Omnilife USA operates multiple

distribution centers throughout the United States and is headquartered in El Paso, Texas.

46.      As majority shareholder of Grupo Omnilife, and President and Chairman of the

Board for both Grupo Omnilife and Omnilife USA, Vergara operates and manages the two

enterprises.

47.      Vergara has conducted the enterprises through a pattern of racketeering, coercion,

and intimidation, that poses a threat of continuing unlawful activity.  Vergara's numerous

predicate offenses include multiple acts of wire fraud under 18 U.S.C. § 1343, and mail fraud

under 18 U.S.C. § 1341.  These offenses include, but are not limited to, the following:

(a)     Vergara transmitted, or caused to be transmitted, the following communications by means of wire and radio communications in interstate and/or foreign commerce for the purpose of executing his scheme:

(i)     Multiple radio and television broadcasts since early April 2015;

(ii)    Transmission of the minutes of the April 3 Meeting to the press;

(iii)   Transmission of the minutes of the April 3 Meeting to Fuentes in the United States;

(iv)    Phone call from Reyes to Fuentes on or about April 9, 2015 communicating Vergara's threats;

(v)     Phone call to Fuentes in early April 2015 notifying her that her security detail had been removed;

(vi)    Phone call to Fuentes in early April notifying her that she was no longer permitted to enter the Omnilife Entities' offices;[5]

(vii)   Text  message from Vergara to Fuentes to arrange a meeting in El Paso on July 9, 2015;

(viii)  Transmissions to financial institutions in the United States between April and August 2015.

(b)     Vergara used the mail for the purpose of executing, or attempting to execute, his scheme:

(i)     Pursuant to Vergara's instruction, Coello-Trejo sent a letter to Fuentes's home in El Paso to notify her that her power of attorney with

_____

[5] Fuentes also learned this information through statements made by Vergara and Coello-Trejo to the media regarding Fuentes's ouster from Omnilife.

respect to certain bank accounts at JPMorgan Chase bank had been revoked.

48.     The predicate offenses are related to each other and to the affairs of the enterprises, Grupo Omnilife and Omnilife USA. The predicate offenses were committed by Vergara and directed toward Fuentes in order to achieve the goal of depriving Fuentes of her shares and economic interest in Grupo Omnilife and Omnilife USA.

49.     Vergara's past actions, express threats of continuing unlawful activities, and unilateral control over Grupo Omnilife and Omnilife USA give rise to an inference that Vergara is reasonably likely to engage in similar unlawful conduct in the future. Accordingly, there is a reasonable likelihood that Vergara will commit a violation of 18 U.S.C. § 1961 in the future.

50.     As a direct and proximate result of Vergara's violations of 18 U.S.C. § 1961, *et seq.*, and his scheme to defraud Fuentes, Fuentes has sustained damages. Fuentes's damages include, but are not limited to the following:

(a)     Financial loss resulting from Fuentes's wrongful removal as CEO of Omnilife USA and Grupo Omnilife and the interference with her rights as shareholder thereof, including loss of income, dividends and distributions, decrease in the value of the business as a result of Vergara's actions, and the loss resulting from the deprivation of the other benefits attendant her position, such as a security detail.

(b)     Reputational harm resulting from Vergara's false statements including the reasons purportedly underlying her removal as CEO of Omnilife USA and Grupo Omnilife.

WHEREFORE, Fuentes requests treble damages and her attorney's fees and costs as provided in 18 U.S.C. § 1964(c).

**COUNT III**
**CONSPIRACY TO VIOLATE RICO 18 U.S.C. § 1962(d) (AGAINST VERGARA)**

51.     Fuentes re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 35 as if fully set forth herein.

52.     Vergara told Coello-Trejo about his plan to defraud Fuentes.

53.     Vergara enlisted Coello-Trejo to help him effectuate his scheme:

(a)     Vergara and Coello-Trejo agreed that Coello-Trejo would use broadcast radio to further the scheme to defraud Fuentes.  On or before April 1, 2015, Coello-Trejo made multiple radio appearances to inform Fuentes and the public that Fuentes had been ousted her role and alleging wrongdoing and theft;[6]

(b)     Vergara instructed Coello-Trejo to send a letter directly to Fuentes in the United States, at her home in El Paso, revoking her power of attorney with respect to certain bank accounts;

(c)     Vergara retained Coello-Trejo to serve as counsel to Grupo Omnilife.

54.     Vergara and Coello-Trejo understood that the purpose of Coello-Trejo's actions was to aid in Vergara's scheme to defraud Fuentes.

55.     As a direct and proximate result of Vergara's violations of 18 U.S.C. § 1961, *et seq.*, and his scheme to defraud Fuentes, Fuentes has sustained damages.  Fuentes's damages include, but are not limited to the following:

(a)     Financial loss resulting from Fuentes's wrongful removal as CEO of Omnilife USA and Grupo Omnilife and the interference with her rights as

---

[6] This media campaign continues to the present.

shareholder thereof, including loss of income, dividends and distributions, decrease in the value of the business as a result of Vergara's actions, and the loss resulting from the deprivation of the other benefits attendant her position, such as a security detail.

(b)     Reputational harm resulting from Vergara's false statements, including the reasons purportedly underlying Fuentes's removal as CEO of Omnilife USA and Grupo Omnilife.

WHEREFORE, Fuentes requests treble damages and her attorney's fees and costs as provided in 18 U.S.C. § 1964(c).

## COUNT IV
## BOOKS AND RECORDS TEX. BUS. ORGS. CODE §§ 21.218, 21.222 (AGAINST VERGARA)

56.     Fuentes re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 35 as if fully set forth herein.

57.     Fuentes is an equitable shareholder of more than 5% of Omnilife USA stock and has been an Omnilife USA shareholder for longer than six months.

58.     On September 29, 2015, Fuentes sent a demand letter to the Vice President & Treasurer, and the registered agent of Omnilife USA requesting to examine and copy Omnilife USA's books and records.  In that letter, Fuentes outlined the purposes for her request:  (1) to assess the effectiveness of Omnilife USA's management; (2) to investigate misconduct and corporate malfeasance perpetrated by Vergara; and (3) to ascertain the value of her ownership in Omnilife USA.

59.     Despite Fuentes's compliance with all of the requirements of § 21.218, Vergara has refused to provide access to Omnilife USA's relevant books and records.

60.     Fuentes has incurred attorney's fees, costs and expenses to enforce her shareholder's rights.

WHEREFORE, Fuentes requests injunctive relief allowing her to examine and copy all of Omnilife USA's relevant books and records, as well as attorney's fees, costs, and other expenses incurred by Fuentes in enforcing her rights under § 21.218, as provided by § 21.222.

## COUNT V
## EQUITABLE ACCOUNTING (AGAINST VERGARA)

61.     Fuentes re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 35 as if fully set forth herein.

62.     Fuentes is an equitable shareholder of Omnilife USA stock.

63.     Vergara, an officer of Omnilife USA, has engaged in corporate misconduct including unlawfully removing Fuentes from Omnilife USA and misusing corporate funds.

WHEREFORE, Fuentes requests injunctive relief requiring Omnilife USA to provide an accounting of its corporate funds.

## COUNT VI
## REHABILITATIVE RECEIVERSHIP TEX. BUS. ORGS. CODE § 11.404 (AGAINST VERGARA)

64.     Fuentes re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 35 as if fully set forth herein.

65.     Omnilife USA is a Texas corporation and a "domestic entity" under Tex. Bus. Orgs. Code § 1.002(18).

66.     This action was brought by an owner of Omnilife USA.

67.     As the sole owners and officers of Omnilife USA, Vergara and Fuentes governed the affairs of Omnilife USA prior to April 2015.

68.     In April 2015, Vergara unlawfully and unilaterally removed Fuentes as CEO of Omnilife USA and has since prevented Fuentes from exercising any of her rights to participate in the management and operations of the company.

69.     Fuentes and Vergara are deadlocked in the management of Omnilife USA and have been unable to break the deadlock.  Vergara has excluded Fuentes from participating in all of the affairs of Omnilife USA, including participation in shareholders' meetings and shareholders' votes; has taken unilateral actions regarding the affairs of Omnilife USA without the participation of Fuentes, in violation of governing bylaws of the Omnilife Entities; and has refused to negotiate with Fuentes regarding liquidation of her shares, leading to a deadlock between Vergara and Fuentes regarding the management of the affairs of Omnilife USA.

70.     As CEO of the Omnilife Entities, Fuentes was responsible for the day-to-day management of the business, and her unlawful removal has irreparably injured the business of the Omnilife Entities, including Omnilife USA, and continues to pose a threat of irreparable injury.

71.     Vergara's unlawful removal of Fuentes, a competent CEO who oversaw the daily operations of the Omnilife Entities, was not done in accordance with the exercise of business judgment but instead was perpetrated solely in furtherance of Vergara's personal vendetta and his unlawful scheme to defraud Fuentes of her ownership of the Omnilife Entities.

72.     Fuentes's removal sent the Omnilife Entities into unnecessary upheaval, causing damages to the entities and to Fuentes personally.

73.     Vergara has used his unlawful control of the Omnilife Entities, including Omnilife USA, to conduct a relentless media campaign against Fuentes, damaging both Fuentes's brand, which includes valuable product lines sold by Omnilife USA, and the Omnilife

brand, resulting in irreparable injury and a continuing threat of further irreparable injury to Omnilife USA.

74.     Vergara has used his unlawful control of the Omnilife Entities, including Omnilife USA, to discontinue valuable product lines based solely on his personal vendetta against Fuentes, resulting in irreparable injury and a continuing threat of further irreparable injury to Omnilife USA.

75.     Vergara has used his unlawful control of the Omnilife Entities, including Omnilife USA, to cause the misdirection of corporate funds for Vergara's personal benefit, including in furtherance of his illegal scheme to defraud Fuentes.  This misuse of corporate funds has irreparably injured Omnilife USA and continues to pose a threat of irreparable injury.

76.     Therefore, irreparable injury to Omnilife USA is being suffered and threatened due to the deadlock.

77.     Vergara has engaged in illegal, oppressive, and fraudulent conduct, including illegally and fraudulently removing Fuentes from Omnilife USA, refusing to provide Fuentes with access to any of Omnilife USA's books and records, and attempting to extort Fuentes in order to gain control over Fuentes's shares.

78.     Vergara's scheme to defraud Fuentes of her shares constitutes minority shareholder oppression:  Vergara has abused his authority with the intent to harm Fuentes; has taken actions, including the removal of Fuentes as CEO of the Omnilife Entities, that do not comport with the honest exercise of his business judgment; and has taken actions creating a serious risk of harm to Omnilife USA.

79.     Because Vergara and Fuentes are deadlocked in the management of Omnilife USA, and Vergara's actions in connection with Omnilife USA are illegal, oppressive, and fraudulent, Fuentes is entitled to the appointment of a receiver.

WHEREFORE, Fuentes requests the appointment of a receiver for Omnilife USA under § 11.404 of the Texas Business Organizations Code.

## COUNT VII
## BREACH OF INFORMAL FIDUCIARY DUTY (AGAINST VERGARA)

80.     Fuentes re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 35 as if fully set forth herein.

81.     As spouses, parents of two minor children, and business partners, Vergara and Fuentes had a relationship of trust and confidence.  Fuentes relied on this relationship and justifiably placed special confidence in Vergara to act in Fuentes's best interests in both business and personal affairs.  As a result, Vergara owed an informal fiduciary duty to Fuentes.

82.     Vergara's scheme to defraud Fuentes of her Omnilife shares, and all of the inequitable actions taken by Vergara in furtherance of that scheme, constitute a breach of Vergara's fiduciary duty to Fuentes.

83.     As a result of Vergara's breach of fiduciary duty, Fuentes suffered damages.

WHEREFORE, Fuentes requests an entry of judgment awarding Fuentes compensatory damages suffered as a result of Vergara's breach of fiduciary duty, as well as punitive damages, and all other legal and equitable relief to which Fuentes may be entitled.

## COUNT VIII
## DEFAMATION PER SE (AGAINST VERGARA AND COELLO-TREJO)

84.     Fuentes re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 35 as if fully set forth herein.

85.     Vergara and Coello-Trejo, falsely represented in radio and television broadcasts that Fuentes stole 400 million dollars from Grupo Omnilife and transferred the funds to Swiss bank accounts.  Further, Vergara and Coello-Trejo have repeatedly characterized Fuentes as a "criminal" in radio and television broadcasts.  Recently, in interviews with Fox News Latino and ESPN Deportes, Vergara and Coello-Trejo have accused Fuentes of attempting to poison Vergara.

86.     These radio and television broadcasts have been transmitted and published into the United States in Texas.  Vergara and Coello-Trejo's false statements have also been printed in newspaper and magazine articles in the United States, including the state of Texas, and in Mexico, and can be accessed from any part of the world through internet search engines.

87.     These false statements are malicious and defamatory per se:  the statements injure Fuentes's business reputation and falsely accuse Fuentes of criminal acts, dishonesty, and fraud.

88.     Vergara and Coello-Trejo purposely directed their defamatory statements toward Texas and knew that the effects of their statements would be felt in Texas.

89.     As a result of Vergara and Coello-Trejo's defamatory statements, Fuentes has sustained damages, including financial loss, reputational harm, and emotional distress.

WHEREFORE, Fuentes requests an entry of judgment awarding her compensatory and punitive damages against Vergara and Coello-Trejo for defamation of character, and requests injunctive relief.

## DEMAND FOR JURY TRIAL

Fuentes demands trial by jury as to all issues so triable.

Dated:  October 19, 2015

Respectfully submitted,

/s/ Ricardo H. Puente
Carlos F. Concepción
Texas Bar No.  24044237
Ricardo H. Puente
JONES DAY
600 Brickell Avenue
Brickell World Plaza
Suite 3300
Miami, FL 33131
Telephone: 305.714.9700
Facsimile:  305.714.9799
E-mail:  cconcepcion@jonesday.com
E-mail:  rpuente@jonesday.com

/s/ Sidney S. McClung
Sidney S. McClung
Texas Bar No. 24083880
JONES DAY
2727 North Harwood Street
Dallas, TX 75201.1515
Telephone:  214.220.3939
Facsimile:  214.969.5100
E-mail:  smcclung@jonesday.com

***Counsel   For   Plaintiff   Angélica
Fuentes Téllez***