## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## EL PASO DIVISION

| | | |
|---|---|---|
| **ANGELICA FUENTES TELLEZ,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CASE NO. 3:15-CV-00304-KC** |
| | § | |
| **JORGE CARLOS VERGARA** | § | |
| **MADRIGAL AND JAVIER COELLO-** | § | |
| **TREJO,** | § | |
| | § | **ORAL HEARING REQUESTED** |
| **Defendants.** | § | |

## DEFENDANTS' JOINT MOTION TO DISMISS FOR *FORUM NON CONVENIENS*, SUBJECT TO MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT PURSUANT TO RULE 12(b)(2)

# TABLE OF CONTENTS

TABLE OF CONTENTS..................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................. ii

ISSUE PRESENTED ....................................................................................................... iv

Introduction....................................................................................................................... 1

   I.   Statement of Facts ................................................................................................. 3

      A.   At Its Core, This Is A Dispute Between Mexican Parties About Ownership and Control of a Mexican Corporation. ................................................................................. 3

      B.   These Issues Are Already Being Litigated in Multiple Mexican Courts, and in an International Arbitration. ................................................................................... 5

  II.   Argument and Authorities................................................................................... 11

      A.   Mexico Is An Available and Adequate Alternative Forum. ......................... 13

          1.   Mexico Is An Available Forum. ........................................................... 13

          2.   Mexico Is An Adequate Forum............................................................. 14

      B.   The Private and Public Interest Factors Weigh in Favor of Dismissal. ........................ 16

          1.   The Private Interest Factors Overwhelmingly Favor Dismissal. ........................... 16

          2.   The Public Interest Factors Overwhelmingly Favor Dismissal. ........................... 20

 III.   Conclusion and Prayer ...................................................................................... 25

# TABLE OF AUTHORITIES

## Cases

*Alcaraz Martinez v. White*,
  492 F. Supp. 2d 1186 (N.D. Cal. 2007) ................................................................................ 22

*Alpine View Co. v. Atlas Copco AB*,
  205 F.3d 208 (5th Cir. 2000) ................................................................................................ 12

*Baumgart v. Fairchild Aircraft Corp.*,
  981 F.2d 824 (5th Cir. 1993) .......................................................................................... 11, 21

*City of New Orleans Emples. Ret. Sys. v. Hayward*,
  508 F. App'x 293 (5th Cir. 2013)........................................................................................... 24

*Daimler AG v. Bauman*,
  ___ U.S. ___, 134 S. Ct. 746 (2014)..................................................................................... 19

*De Aguilar v. Boeing Co.*,
  806 F. Supp. 139 (E.D. Tex. 1992),
  *aff'd*, 11 F.3d 55 (5th Cir. 1993) .......................................................................................... 15

*Devon Energy Prod. Co., L.P. v. GlobalSantaFe S. Am.*,
  No. H-06-2992, 2007 U.S. Dist. LEXIS 33081
  (S.D. Tex. May 4, 2007) ......................................................................................................... 21

*Dickson Marine, Inc. v. Panalpina, Inc.*,
  179 F.3d 331 (5th Cir. 1999) ................................................................................................. 21

*Dtex, LLC v. BBVA Bancomer, S.A.*,
  508 F.3d 785 (5th Cir. 2007) ........................................................................................ passim

*Empresa Lineas Maritimas Argentinas, S.A. v.*
  *Schichau-Unterweser, A.G.*,
  955 F.2d 368 (5th Cir. 1992) .......................................................................................... 14, 20

*Gonzales v. P.T. Pelangi Niagra Mitra, Int'l*,
  196 F. Supp. 2d 482 (S.D. Tex. 2002)................................................................................... 20

*Gonzalez v. Chrysler Corp.*,
  301 F.3d 377 (5th Cir. 2002) .......................................................................................... 13, 15

*Gulf Oil Corp. v. Gilbert*,
  330 U.S. 501 (1947)..................................................................................... 11, 16, 24

*Ibarra v. Orica United States Inc.*,
  493 F.App'x 489 (5th Cir. 2012) ........................................................................................... 12

*In re Air Crash Disaster Near New Orleans, La.*,
  821 F.2d 1147 (5th Cir. 1987) ........................................................................................ 13, 20

*In re Air Crash Disaster Near New Orleans, La.*,
  883 F.2d 17 (5th Cir. 1989) ................................................................................................... 13

*In re Ford Motor Co.*,
  591 F.3d 406 (5th Cir. 2009) ................................................................. 13

*In re Koreag, Controle et Revision S.A.*,
  961 F.2d 341 (2d Cir. 1992) .................................................................. 23

*Innovation First Int'l, Inc. v. Zuru, Inc.*,
  513 F. App'x 386 (5th Cir. 2013) ........................................................... 20

*Kempe v. Ocean Drilling & Exploration Co.*,
  876 F.2d 1138 (5th Cir. 1989) ............................................................... 14

*Mendez v. Submar, Inc.*,
  No. H-12-3208, 2013 U.S. Dist. LEXIS 127991
  (S.D. Tex. Sept. 9, 2013) ...................................................................... 16

*Pan Am. World Airways, Inc. v. Lopez*,
  490 U.S. 1032, 109 S. Ct. 1928, 104 L. Ed. 2d 400 (1989) ................... 13

*Piper Aircraft Co. v. Reyno*,
  454 U.S. 235 (1981) ................................................................... 11, 12, 15

*Saqui v. Pride Cent. Am. LLC*,
  595 F.3d 206 (5th Cir. 2010) ........................................................... 13, 15

*Seguros Comercial Americas S.A. De C.V. v.*
  *American President Lines, Ltd.*,
  933 F. Supp. 1301 (S.D. Tex. 1996) .......................................... 15, 22, 23

*Sinochem v. Malay Int'l Shipping Corp.*,
  549 U.S. 422 (2007) ..................................................................... 2, 11, 12

*Vasquez v. Bridgestone/Firestone, Inc.*,
  325 F.3d 665 (5th Cir. 2003) ...................................................... 13, 14, 15

*Veba-Chemie A.G. v. M/V GETAFIX*,
  711 F.2d 1243 (5th Cir. 1983) ............................................................... 14

*Zermeno v. McDonnell Douglas Corp.*,
  246 F. Supp. 2d 646 (S.D. Tex. 2004) .................................................... 15

## ISSUE PRESENTED

Whether the Court should dismiss this case under the doctrine of *forum non conveniens*, because Mexico is an available and adequate alternative forum for this dispute, and the private and public interest factors overwhelmingly weigh in favor of dismissal.

Subject to and without waiving their challenges to personal jurisdiction, Defendants Jorge Carlos Vergara Madrigal ("Vergara") and Javier Coello-Trejo ("Coello-Trejo") (together, "Defendants") file this Motion to Dismiss for *Forum Non Conveniens* and respectfully show as follows.

## Introduction

This is a Mexican dispute that should be decided by Mexican courts. Plaintiff Angelica Fuentes Tellez ("Fuentes") is a Mexican citizen who was living in Mexico at the time of the operative events asserted in her Amended Complaint. Defendants are Mexican citizens, too, and both have filed motions to dismiss for lack of personal jurisdiction. The heart of Fuentes's complaints involve the control and ownership of Grupo Omnilife, a large Mexican company that does not do business in Texas and is not even alleged to be subject to jurisdiction here. Fuentes's complaints about Omnilife USA, a small and wholly-owned Grupo Omnilife subsidiary, are dependent on her complaints about Grupo Omnilife, which cannot be resolved without reference to Grupo Omnilife's bylaws, Mexican corporate law, and Mexican court orders. The allegedly defamatory statements were made in Mexico, where Vergara and Fuentes are well-known public figures, to the Mexican press. The vast majority, if not all, of the evidence necessary to resolve the Grupo Omnilife dispute is in Mexico, and in Spanish. In short, there is no meaningful connection between this litigation and Texas or the United States, and it would be patently unfair to require Defendants to defend themselves here. It would also be patently unfair to impose the burden of a lengthy jury trial on an El Paso jury.

The best proof that this is a Mexican dispute is that there are already at least *eight* lawsuits pending in Mexico—all on file before Fuentes initiated this litigation—addressing the same facts and issues raised in Fuentes's Amended Complaint. Fuentes is actively participating

in this litigation and has asked for relief that would moot this litigation or any relief granted herein.  She has also filed an international arbitration involving these same facts and issues.  This case can—and should—be tried in Mexico, where the events giving rise to the dispute took place, where the evidence is, and where the courts are intimately familiar with the governing law.

In other words, "[t]his is a textbook case for immediate *forum non conveniens* dismissal." *Sinochem v. Malay Int'l Shipping Corp.*, 549 U.S. 422, 435 (2007).  That doctrine allows a court to dismiss a case when the convenience of the parties and court, as well as the interests of justice, indicate that the case should be tried in a foreign forum.   The *forum non conveniens* two-part test is straight-forward, and easily met here.  First, Mexico is an available and adequate forum, as the Fifth Circuit has held several times on facts less convincing than in this case.  Second, every one of the relevant private and public interest factors—access to sources of proof; the ability to compel and cost of obtaining attendance of witnesses; other practical problems increasing the burden, delay, and cost of this lawsuit; questions as to enforceability of judgment; the likelihood that the lawsuit was brought to vex or harass; court congestion; the local interest in having localized controversies resolved at home; the interest in holding the trial in a forum familiar with the governing law; the avoidance of unnecessary problems in conflicts of law or application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty—all weigh definitively in favor of dismissal.   In short, the case should be tried in Mexico—not in the United States, whose connection to the parties and claims is questionable at best.

I.      **Statement of Facts**

      A.      **At Its Core, This Is A Dispute Between Mexican Parties About Ownership and Control of a Mexican Corporation.**

Fuentes is a Mexican citizen.  Dkt. 16 at 3.[1]  Although she now claims to be an El Paso resident, *id.*, that is a recent development.  *See* Case No. 3:15-cv-00181-KC, Dkt. 105 at 23.  She renounced her United States citizenship in 2011.  Dkt. 22-1 at 53.  Vergara and Coello-Trejo are Mexican citizens.  Dkt. 16 at 3; Dkt. 18 at 25.  Dkt. 22-1 at 1.  Coello-Trejo has absolutely no connection to Texas; he has not even stepped foot in the state since 1994.  *See* Dkt. 18 at 25-27.  Vergara's connection to Texas is only slightly less tenuous.  *See* Dkt. 22-1 at 13-19.  Neither Defendant has any property or bank accounts in Texas.  Dkt. 18 at 27; Dkt. 22-1 at 18.

Grupo Omnilife S.A. de C.V. ("Grupo Omnilife"), the corporate entity at the heart of Fuentes's allegations, is a Mexican corporation.  Dkt. 22-1 at 13.  It employs more than 3000 people, most of whom are in Mexico.  *Id.*; Ex. A (Declaration of Pablo Lopez) at ¶ 3.  It does not do business in Texas and is governed by Mexican corporate law.  Ex. B (Declaration of Carlos Loperena) at ¶ 9; Ex. A at ¶ 3; Dkt. 22-1 at 13, 17.  Its books, records, and employees are located in Guadalajara, Mexico.  Dkt. 22-1 at 14; Ex. A at ¶ 3.

Grupo Omnilife has more than 30 subsidiaries, some of which do business with many other entities which also have the word Omnilife in their names, or a variation of that name.  Ex. A at ¶ 3.  Omnilife USA, the entity liberally mentioned in Fuentes's Amended Complaint, is only one of those subsidiaries.  *Id.*  It is wholly owned by Grupo Omnilife.  Dkt. 22-1 at 13.  Neither Vergara nor Fuentes own any stock in Omnilife USA.  *Id.* at 16.  When Fuentes handled the daily operations of Grupo Omnilife and Omnilife USA, she did so almost exclusively in Mexico.  Dkt. 22-1 at 16.  Fuentes has been enjoined by a Mexican court from taking any action

---

[1] Citations to documents already on file with the Court are to the docket number and page assigned by the Court's electronic docketing system.

on behalf of Grupo Omnilife.   Ex. A at ¶ 5; Ex. A-1.   After the injunction issued, Grupo Omnilife removed her from her positions with certain Omnilife companies, too, including Omnilife USA.  *See* Ex. A at ¶ 6.

With almost no exceptions, all the conduct about which Fuentes complains took place in Mexico:

- All the actions leading to Fuentes's removal as CEO of Grupo Omnilife and its subsidiaries, including but not limited to the April 2015 shareholders' meeting mentioned in her Amended Complaint, took place in Mexico. Dkt. 22-1 at 32.

- The allegedly defamatory statements were made in Mexico, in Spanish, to Mexican media outlets.  Dkt. 18 at 26; Dkt. 22-1 at 16-17; *see also, e.g.*, Case No. 3:15-cv-00181-KC, Dkt. 105 at 10 (finding that there "has been extensive press and media coverage in Mexico regarding the ongoing lawsuits between Vergara and Fuentes, some of which has been initiated by Vergara's Mexican legal counsel" and citing evidence introduced in the Hague trial).  (As the Court knows, there is a great deal of interest in Mexico in the dispute between Fuentes and Vergara, as both are well-known public figures in Mexico.  *Id.* at 2, 10; Ex. A at ¶ 24.)

- The meeting between Vergara and Fuentes's attorney, Ismael Reyes Retana Tello, took place in Mexico.  Dkt. 22-1 at 15.

- The Grupo Omnilife employees' protest in front of Fuentes's attorney's office took place in Mexico.  Dkt. 22-1 at 18.

- The criminal charges took place in Mexico and are being handled by Mexican courts.

- The purported death-threat email was received by Fuentes's Mexican counsel. Dkt. 16 at 14.

- The security detail mentioned in the Amended Complaint was located in Mexico. Dkt. 22-1 at 17.

The few events that have any relationship to Texas have almost no relationship to this lawsuit. As the Court knows, the July 2015 encounter between Vergara and Fuentes took place in El Paso because Fuentes had taken their children out of Mexico, over Vergara's objections, and in violation of Vergara's custody rights. *See* Dkt. 22-1 at 15, 17. And any letters sent or calls made to Texas were after-the-fact, ministerial actions. *See* Dkt. 16 at 12.

### B. These Issues Are Already Being Litigated in Multiple Mexican Courts, and in an International Arbitration.

The best proof that this is a Mexican dispute is that there are at least eight lawsuits currently pending in Mexico that are addressing the allegations set forth in Fuentes's Amended Complaint. To fully understand the ways in which the Amended Complaint is duplicative of that litigation (and an international arbitration taking place in New York), some additional background is needed.

As the Court knows, Vergara and Fuentes met in Mexico in 2007. Dkt. 22-1 at 13. Within months, they had begun a romantic relationship and Fuentes became Chief Executive Officer ("CEO") of Grupo Omnilife. *Id.* They married in Mexico in 2008. *Id.* at 14. They and their two daughters lived in Mexico until Fuentes took the Children to El Paso in April 2015. Case No. 3:15-cv-00181-KC, Dkt. 105 at 22-23.

<p style="text-align:center; color:red;">**REDACTED**</p>

**REDACTED** (Vergara does not have Parkinson's, although for a time he suffered from similar symptoms.  He has not experienced these symptoms since shortly after he and Fuentes separated. Ex. C-1.)

<p align="center">**REDACTED**</p>

In March 2015, after discovering this and several other instances of Fuentes's self-dealing and financial malfeasance, Vergara filed a lawsuit against her in the 10th Commercial Court in Jalisco, Mexico.  Ex. A at ¶ 4; Ex. B-2.  In this lawsuit, called "Case 891," Vergara seeks, among other relief, a judicial declaration of nullity of several transactions purporting to transfer stock in certain Mexican companies from Vergara to Fuentes (on the ground that she

used his signature stamp without his permission); to revoke several donation agreements of stock from Vergara to Fuentes; and to separate Fuentes as a shareholder of Grupo Omnilife and other companies in which she and Vergara are shareholders.  Ex. A at ¶ 4; Ex. B-2.  Fuentes has answered Case 891 and actively participated, through counsel, in the litigation.  Ex. A at ¶¶ 8, 25; Ex. B-3.  Hundreds of pages of evidence, including the original documents in which Fuentes used Vergara's stamp signature without his permission, have been filed with the court, where it must stay until final resolution of the dispute.  Ex. A at ¶ 9.

When Vergara filed Case 891, he also sought an injunction preventing Fuentes from taking any action on behalf of Grupo Omnilife and all entities in which he and Fuentes are shareholders.  *Id.* at ¶ 4.  The court granted the injunction on March 27, 2015.  *Id.* at ¶ 5; Ex. A-1.  The injunction also prohibited Fuentes from acting as a representative or agent of Grupo Omnilife and reinstated Vergara in Grupo Omnilife's administration and that of the other companies.  *Id.*  The injunction remains in effect today.  *Id.*

Shortly after obtaining the March 27 injunction, Vergara convened a Grupo Omnilife shareholders' meeting in Mexico on April 3, 2015.  Ex. A at ¶ 6.  The meeting, of course, took place in Mexico.  *Id.*; Dkt. 22-1 at 16.  Because he and Fuentes are the only shareholders, and because Fuentes was enjoined from taking any action on behalf of Grupo Omnilife or the subsidiaries, Vergara was the only shareholder present.  *See* Dkt. 16 at 6-7.  This is the meeting, challenged in Fuentes's Amended Complaint, in which she was removed as CEO of Grupo Omnilife and also removed from her position with Omnilife USA.  *Id.*; Ex. A at ¶ 6.  Fuentes's Amended Complaint fails to mention the injunction.  *See generally* Dkt. 16.  It is Vergara's

position that the injunction, among other things, made the April 3 meeting and the resolutions adopted therein lawful under Mexican law.[2]

In May 2015, Vergara, Grupo Omnilife, and the other Mexican companies filed three more complaints against Fuentes in the 5th Commercial Court in Jalisco, Mexico.  Ex. A at ¶ 10; Ex. B-4.   In these lawsuits, called "Cases 1328, 1329, and 1330," Vergara, Grupo Omnilife, and the other companies are seeking a declaration that the April 6 shareholders meeting was valid, as well as a declaration that the alleged February 6 shareholders meeting was a nullity.  Ex. A at ¶ 10; Ex. B-4.  Fuentes has filed an answer in these cases and, through counsel, is actively participating in the litigation. Ex. A at ¶¶ 11, 25; Ex. B-5.  Fuentes's answers specifically assert that the February 6 meeting was valid and that the April 3 meeting was not.  *See id.* at 5.  These cases are in the evidentiary period.  Ex. A at ¶ 12.  The vast majority, if not all, of the documentary evidence for these cases is in Mexico, and in Spanish.  *Id.* at ¶¶ 12, 22.  This evidence, like the evidence in Case 891, will be filed with the court, where it will remain until final disposition.  *See* Ex. B at 15.[3]

Also in May 2015, Vergara, Grupo Omnilife, and other Mexican companies filed a lawsuit against Fuentes in the 23rd Civil Court of the Federal District (Mexico City).  Ex. A at ¶ 13; Ex. B-6.   In this case, called "Case 456," Vergara and the companies are seeking a declaratory judgment as to the illegality of certain actions of Fuentes, an annulment of certain credit agreements, promissory notes and other documents executed by Fuentes; asserting a claim of unjust enrichment against Fuentes; and seeking a declaratory judgment regarding the misuse of a power of attorney granted by Vergara to Fuentes.  Ex. A at ¶ 13; Ex. B-6.  Fuentes has filed

---

[2] It is worth noting that Fuentes was in Mexico on April 3; she did not begin staying in El Paso until April 9, 2015. Case 3:15-cv-00181-KC, Dkt. 105 at 4-5.
[3] Vergara held shareholders meetings on April 3 of companies other than Grupo Omnilife which are also being litigated in these cases.

an answer and, through counsel, is actively participating.  *Id.* at ¶¶ 13, 25; Ex. B-7.  Case 456 is also in the evidentiary period.  Ex. A at ¶ 14.  The evidence includes over 100,000 pages of documents, including expert reports on graphoscopy (signature authenticity verification), graphology (handwriting analysis), and psychology, as there are allegations that Fuentes forged Vergara's signature on important documents.  *Id.*  Virtually all of the evidence is in Spanish and is being maintained in the possession of the court until final resolution of the dispute.  *Id.*

Fuentes herself has filed three lawsuits in Mexico about the April 3 shareholders meeting.  In June 2015, she filed three complaints in a civil court of Tlajomulco, Mexico against Vergara, Grupo Omnilife, and other Mexican companies.  Ex. A at ¶ 15; Ex. B-8.  In these cases, called "Cases 578, 579, and 580," Fuentes objects to the resolutions adopted at the April 3 Grupo Omnilife shareholders meetings of the companies.  Ex. A at ¶ 15.  She is also seeking a declaration that the April 3 meetings violate the bylaws of Grupo Omnilife, the other companies and applicable (*i.e.* Mexican) law.  Ex. A at ¶ 15; Ex. B-8 at 4 (setting forth certain Mexican laws the meeting is alleged to have violated).  Grupo Omnilife and the other companies have filed *amparos* in these cases, although Vergara has not been served.  Ex. A at ¶ 15.

Fuentes has also filed an international arbitration, in the International Court of Arbitration, in New York.  **REDACTED**

**REDACTED**

**REDACTED**

Fuentes has sought discovery in the arbitration, but the arbitration panel has denied all discovery until both parties have submitted memorials outlining claims and defenses.  Ex. A at ¶ 16.  Vergara's memorial is scheduled to be filed in April.[5]  *Id.*

Any argument Fuentes may make that the issues that will be litigated in this case are unrelated to the ongoing litigation in Mexico is foreclosed by the substance of the allegations and defenses in the Mexican lawsuits.  Such an argument is also belied by Fuentes's own discovery requests in this lawsuit, which are incredibly broad and would essentially require Vergara to produce all the evidence that will be used in the Mexican lawsuits.  *See* Dkt. 27 at 17-26.

---

**REDACTED**

[5] Vergara's position in the arbitration is that the Owners' Agreement is invalid and ineffective, for a host of reasons, and that all disputes between Vergara and Fuentes should be resolved in Mexico.  Fuentes apparently believes either that her claims in this lawsuit fall outside the scope of the arbitration clause in the Owners' Agreement, *see* Dkt. 16 at 5 n.1, or that she can use this lawsuit for discovery she has not been able to obtain in the arbitration, s*ee* Dkt. 27 at 17-26; *see also* below at Part II.B.1.

Should this Court not dismiss this lawsuit, and should the arbitration tribunal incorrectly decide that any portion of Fuentes and Vergara's dispute is subject to arbitration, Vergara does not waive any right to arbitration he may possess.

---

## II.       Argument and Authorities

A court's authority to dismiss cases "through the doctrine of *forum non conveniens* derives from the court's inherent power, under Article III of the Constitution, to control the administration of the litigation before it and to prevent its process from becoming an instrument of abuse, injustice, or oppression.   Through this power a federal trial court may decline to exercise its jurisdiction, even though the court has jurisdiction and venue, when it appears that the convenience of the parties and the court and the interests of justice indicate that the action should be tried in another forum." *Baumgart v. Fairchild Aircraft Corp.*, 981 F.2d 824, 828 (5th Cir. 1993) (internal citations and quotation marks omitted).   A court's interest in controlling its own docket also justifies dismissal on *forum non conveniens* grounds, along with the fact that "[j]ury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *Id.*   The doctrine was designed, at least in part, to prevent vexatious forum shopping. *See Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 507 (1947).[6]   It is governed by federal law, even in diversity cases.   *Dtex, LLC v. BBVA Bancomer, S.A.*, 508 F.3d 785 (5th Cir. 2007) (per curiam) (affirming and adopting the district court's opinion, 512 F. Supp. 2d 1012, 1019 (S.D. Tex. 2007)).[7]   Trial courts have broad discretion to dismiss cases on *forum non conveniens* grounds. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 257 (1981).

In general, a court may not proceed in a case "without first determining that it has jurisdiction over the category of claim in suit (subject-matter jurisdiction) and the parties (personal jurisdiction)."   *Sinochem v. Malay Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007). Because a *forum non conveniens* dismissal is not a decision on the merits, however, and rather is

---

[6] The doctrine grew largely out of interstate/federal concerns, but domestic *forum non conveniens* has since been codified into the federal transfer statute. *See Gulf Oil Corp.*, 330 U.S. at 504; 28 U.S.C. § 1404(a). Now, common-law *forum non conveniens* generally applies only when the alternative forum is a foreign country. *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007).
[7] Pinpoint citations to *Dtex* will be to the district court's opinion.

"a determination that the merits should be adjudicated elsewhere[,] . . . [a] district court may dispose of an action by a *forum non conveniens* dismissal, bypassing questions of subject-matter and personal jurisdiction, when considerations of convenience, fairness, and judicial economy so warrant." *Id.* at 432.   Accordingly, this Court can dismiss this case on *forum non conveniens* grounds without first determining whether it has jurisdiction over the Defendants. *Id.*; *see also Ibarra v. Orica United States Inc.*, 493 F.App'x 489, 492-493 (5th Cir. 2012) (affirming dismissal of cause on FNC grounds where the court did not allow jurisdictional discovery because the district court "readily determined transnational discovery would be burdensome and involve issues of international notice and process because the accident and explosion took place in Mexico, most of the witnesses are likely in Mexico" and "the district court persuasively showed that resolving the *forum non conveniens* would be less burdensome than the jurisdictional analysis").

Although a strong favorable presumption is usually applied to a plaintiff's choice of forum, that choice is not dispositive. *Dtex*, 512 F. Supp. 2d at 1019.  A foreign plaintiff's choice of forum in particular "merits less deference than courts typically give to such decisions." *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 222 (5th Cir. 2000).   When a plaintiff has a significant presence in a foreign forum, her choice of a U.S. forum is also entitled to less deference.  *Dtex*, 512 F. Supp. 2d at 1020.  Thus, because Fuentes is not a U.S. citizen, and because she has a significant presence in Mexico, her choice to pursue litigation in Texas is not entitled to the usual deference.  *See id.*

The *forum non conveniens* analysis follows a two-part framework.  First, "the court must determine whether there exists an alternative forum." *Dtex*, 512 F. Supp. 2d at 1019 (quoting *Piper Aircraft*, 454 U.S. at 254, n.22).  "Second, the court must determine which forum is best

suited to the litigation." *Id.* The "ultimate inquiry" is "where trial will best serve the convenience of the parties and the interests of justice." *Id.* (quoting *In re Air Crash Disaster Near New Orleans, La.,* 821 F.2d 1147, 1162 (5th Cir. 1987) (*en banc*), *vacated on other grounds sub. nom., Pan Am. World Airways, Inc. v. Lopez,* 490 U.S. 1032, 109 S. Ct. 1928, 104 L. Ed. 2d 400 (1989), *reinstated except as to damages by In re Air Crash Disaster Near New Orleans, La.,* 883 F.2d 17 (5th Cir. 1989) (*en banc*)).

> ### A.   Mexico Is An Available and Adequate Alternative Forum.

In deciding whether an alternative forum exists, courts consider both the availability and the adequacy of the foreign forum. *Dtex*, 512 F. Supp. 2d at 1021. "An alternative forum is available when the entire case and all parties can come within the jurisdiction of that forum." *Saqui v. Pride Cent. Am. LLC*, 595 F.3d 206, 211 (5th Cir. 2010) (internal quotation marks omitted). A "forum is adequate when the parties will not be deprived of all remedies or treated unfairly, even though they might not enjoy the same benefits as they might receive in an American court." *Id.* at 212. Here, there is no doubt that Mexico is an available and adequate alternative forum.

> ### 1.   Mexico Is An Available Forum.

The Fifth Circuit has "held in numerous cases that Mexico is an available forum for tort suits against a defendant that is willing to submit to jurisdiction there." *In re Ford Motor Co.*, 591 F.3d 406, 412 (5th Cir. 2009) (discussing *Dtex*, 508 F.3d 785 (5th Cir. 2007); *Vasquez v. Bridgestone/Firestone, Inc.*, 325 F.3d 665, 671 (5th Cir. 2003); *Gonzalez v. Chrysler Corp.*, 301 F.3d 377, 380 n.3 (5th Cir. 2002)); *see also Saqui v. Pride Cent. Am. LLC*, 595 F.3d 206, 212 (5th Cir. 2010). "These many decisions create a *nearly airtight presumption that Mexico is an available forum*." *In re Ford Motor Co.*, 591 F.3d at 413 (emphasis added). Here, Vergara has already submitted to jurisdiction in Mexico, where the same issues Fuentes is pursuing in this

suit are already being litigated.  Ex. A at ¶ 2; *see also Veba-Chemie A.G. v. M/V GETAFIX*, 711 F.2d 1243, 1245 & n.3 (5th Cir. 1983) ("We hold instead that defendant's submission to the jurisdiction of an alternative forum renders that forum available for the purposes of *forum non conveniens* analysis.").  Coello Trejo is willing to stipulate that he is subject to jurisdiction in Mexico.[8]  Mexican courts are already exercising jurisdiction over the dispute between Vergara and Fuentes, and they would exercise jurisdiction over a dispute between Fuentes and Coello Trejo, were Fuentes to file in Mexico.  Ex. B at 12-13.  Moreover, Defendants' proposed order includes a return-jurisdiction clause that allows Fuentes to return to this Court should the lawsuit become impossible in Mexico.  *See Vasquez*, 325 F.3d at 675.  Accordingly, Mexico is an available forum.

### 2.  Mexico Is An Adequate Forum.

Mexico "is presumed to be adequate unless the plaintiff makes some showing to the contrary, or unless conditions in the foreign forum made known to the court, plainly demonstrate that the plaintiff is highly unlikely to obtain basic justice there."  *Dtex*, 512 F. Supp. 2d at 1021 (internal quotation marks omitted).  "'Adequacy' does not require that the alternative forum provide the same relief as an American court."  *Id.*  Indeed, a plaintiff would need to show that she would have "no claim or no ability to recover" whatsoever.  *Id.* at 1023; *accord Kempe v. Ocean Drilling & Exploration Co.*, 876 F.2d 1138, 1145 (5th Cir. 1989); *Empresa Lineas Maritimas Argentinas, S.A. v. Schichau-Unterweser, A.G.*, 955 F.2d 368, 372 (5th Cir. 1992) ("alternate forum is adequate if differences in that forum's laws would not deprive the plaintiff of all remedies or result in unfair treatment").

---

[8] Vergara and Coello-Trejo only agree to jurisdiction in the appropriate locations in Mexico, pursuant to Mexican law, for the claims asserted against them and do not waive their right to invoke Mexico's rules regarding jurisdiction.

Defendants' willingness to submit to jurisdiction in Mexico is not a stipulation as to the merits of Fuentes's claims, which Defendants continue to deny as meritless.

Not surprisingly, just as the Fifth Circuit has held several times that Mexico is an available forum, "[a] number of Fifth Circuit cases have held that Mexico is an adequate forum for litigation, despite differences in Mexican and American substantive and procedural law." *Dtex*, 512 F. Supp. 2d at 1022 (citing *Vasquez*, 325 F.3d at 672; *Gonzalez*, 301 F.3d at 383; *Zermeno v. McDonnell Douglas Corp.*, 246 F. Supp. 2d 646, 659 (S.D. Tex. 2004); *Seguros Comercial Americas S.A. De C.V. v. American President Lines, Ltd.*, 933 F. Supp. 1301, 1309 (S.D. Tex. 1996); and *De Aguilar v. Boeing Co.*, 806 F. Supp. 139 (E.D. Tex. 1992), *aff'd*, 11 F.3d 55 (5th Cir. 1993)); *see also Saqui*, 595 F.3d at 212.

Here, as in these other cases, Mexico is an adequate forum for any litigation between the parties. Mexican law and its judicial system are "competent, fair, and adequate to address the claims" in Fuentes's complaint. *Dtex*, 512 F. Supp. 2d at 1022; Ex. B at 4-5, 9-14. Moreover, while Fuentes may not be able to assert identical claims and obtain identical remedies in Mexico, she can assert claims on the basis of the facts alleged in her Complaint. *Id.* Indeed, she has already done so. See above at Part I.B. Remedies—including annulment of the April 3 shareholders meeting, revocation of resolutions adopted at the meeting, and monetary damages related both to Grupo Omnilife and the defamation claims—are available to Fuentes in Mexico should her claims prove meritorious. Ex. B. at 9-14. Thus, "there is no danger [she] will be deprived of any remedy or treated unfairly," which is the operative test for *forum non conveniens* purposes. *Reyno*, 454 U.S. at 255; Ex. B at 4-5, 9-14.

To the extent Fuentes expresses any concerns about the adequacy of Mexico's legal system, those concerns are "undermined" by the fact that she is currently litigating these commercial matters—as well as custody—in the Mexican courts; has been successful in obtaining some relief in Mexico; and has asked this Court, at least in the related Hague

proceeding, to defer to the outcome of the Mexican court proceedings. *Mendez v. Submar, Inc.*, No. H-12-3208, 2013 U.S. Dist. LEXIS 127991, at *14-15 (S.D. Tex. Sept. 9, 2013); *See* above at Part I.B.; Case No. EP-15-CV-181-KC, Dkt. 111.  Mexico is an adequate forum.

## B.   The Private and Public Interest Factors Weigh in Favor of Dismissal.

The next step of the *forum non conveniens* inquiry requires a determination of "which forum is best suited to the litigation," which involves consideration of whether "certain private and public interest factors weigh in favor of dismissal." *Dtex*, 512 F. Supp. 2d at 1019.  Here, every one of the relevant factors weighs heavily in favor of dismissal.

### 1.   The Private Interest Factors Overwhelmingly Favor Dismissal.

The relevant private interest factors include (1) the relative ease of access to sources of proof; (2) the availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; (3) all other practical problems that make trial of a case easy, expeditious and inexpensive; (4) questions as to the enforceability of a judgment if one is obtained; and (5) whether the plaintiff has sought to "vex," "harass," or "oppress" the defendant. *Dtex*, 512 F. Supp. 2d at 1019, 1023-24 (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)).  As addressed in detail below, each of these factors favors Mexico as the appropriate forum.

The first private-interest factor, "relative ease of access to sources of proof," supports dismissal because virtually all the witnesses and documents are in Mexico.  (This is not at all surprising, given that Mexico is where all events giving rise to this dispute took place.)  The vast majority of witnesses, including Defendants, are located in Mexico.  Ex. A at ¶¶ 9, 12, 14, 18, 19, 21.  Grupo Omnilife is a Mexican company, and thus virtually every individual with knowledge about its management and ownership is located in Mexico.  *See id.*  Fuentes's allegations about coercion, intimidation, and defamation will also require Mexican witnesses, as

the Omnilife employee protest took place in Mexico City, the security detail was located in Mexico, and individuals with knowledge about the truth of the allegedly defamatory statements are also located in Mexico. *See id.*at ¶ 19. Individuals with any knowledge of any damages to Fuentes's reputation as an alleged result of these statements will also likely be in Mexico because that is where the articles have been published and where Fuentes established her professional reputation.

Fuentes's own initial disclosures confirm that the majority of witnesses are in Mexico, as she herself lists 11 witnesses who are located in Mexico. Dkt. 37-1 at 2-4; Ex. A at ¶ 19. There are, at most, two witnesses located in Texas; one is Fuentes herself. Dkt. 37-1 at 2-4. Fuentes's remaining three witnesses, Vergara's former partners in a company called Omnitrition, have absolutely nothing to do with this case. *See* Dkt. 37-1 at 4; Ex. A at ¶ 21. Vergara has not had a business with these individuals since the 1990s, and that business was in Mexico. *Id.* In fact, it appears that one of these individuals, Charlie Ragus, has been dead since 2001. Ex. C-2.

The vast majority of documentary evidence is in Mexico, too: pleadings, orders, and transcripts of Mexican court proceedings; Grupo Omnilife bylaws and governing documents; minutes of the February and April Omnilife meetings; corporate resolutions; donation agreements; transfer documents; accounting documents; share certificates; flight manifests; bank statements; and documents from notaries public. Ex. A at ¶ 22. Furthermore, much of the necessary documentary evidence has already been tendered to the Mexican courts. Ex. A at ¶¶ 9, 12, 14; Ex. B at 15. While it might be possible to obtain some evidence from those courts, the process is burdensome—and unnecessary if litigation continues only in Mexico. *See id.*

In addition, litigating this case in the United States presents a significant language problem. Most of the necessary witnesses speak Spanish. Ex. A at ¶ 19. Most of the

documentary evidence is in Spanish, too.  *Id.* at 22.  All the Mexican pleadings, orders, and hearing transcripts are in Spanish.  *See id.*.  The necessity of providing translators for the witnesses' testimony, and to obtain certified translations of the documents, would add significant, burdensome, and unnecessary expense and delay to these proceedings.  *Id.*; Dkt. 22-1 at 18-19.  Indeed, the document translations alone could cost hundreds of thousands, if not millions, of dollars.  *See* Ex. A at ¶ 22.  Accordingly, because the events at issue took place in Mexico, the witnesses are primarily in Mexico, the documents are in Mexico, and translators would be needed for both witnesses and documents, the relative-ease-of-access-to-sources-of-proof factor strongly favors Mexico.  *See Dtex*, 512 F. Supp. 2d at 1024.

The second factor—availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses—likewise heavily favor dismissal.  There are several non-party witnesses in Mexico who cannot be compelled to attend depositions or trial in Texas.  Ex. A at ¶ 12.  Some party witnesses may not have visas allowing them to travel to the United States.  *Id.* at ¶ 20; Dkt. 22-1 at 18.  Depositions in Mexico may not be possible either, due to different laws about obtaining witness testimony.  Ex. B at 14-15.  These facts, coupled with the lack of witnesses in Texas, weigh heavily in favor of dismissal.  *Dtex*, 512 F. Supp. 2d at 1024.  In addition, the cost of attendance of willing witnesses will be great.  Ex. A at ¶ 20; Dkt. 22-1 at 19.  As the court explained in *Dtex*, "[t]he large number of Mexican witnesses in this case and the fact that many are in different locations add to the cost of securing their attendance, even if they were willing to appear in Texas.  In this case, this expense and the absence of any Texas witnesses contributes to finding that this factor weighs in favor of dismissal."  *Id.* at 1025.

The third factor—other practical considerations that make trial easy, expeditious, and inexpensive—also heavily favors dismissal. This is a dispute between Mexican citizens about events—largely related to Grupo Omnilife, a Mexican company—that took place in Mexico. The connection to Texas is tangential at best. Grupo Omnilife is not—and cannot be—a party here, *see, e.g.*, *Daimler AG v. Bauman*, ___ U.S. ___, 134 S. Ct. 746, 760-62 (2014), but it is centrally involved, as it should be, in the litigation in Mexico. *See* above at Part I.B.; *Dtex*, 512 F. Supp. 2d at 1025 (recognizing the ability to implead other entities as a relevant fact). Without Grupo Omnilife, this Court could resolve, at most, only a small portion of the dispute between the parties. *Dtex*, 512 F. Supp. 2d at 1026 (ability to resolve all claims in one trial is another factor to consider). Moreover, to avoid a conflict with Mexican law, this Court would need to wait to attempt any resolution, as the wrongfulness of Fuentes's ouster is presently being determined by the Mexican courts. The relative expense of proceeding in Mexico versus Texas is also lower, in light of the cost of presenting foreign witnesses, obtaining and translating documents, and the fact that this entire proceeding is duplicative and unnecessary because the parties are already litigating in Mexico. *See Dtex*, 512 F. Supp. 2d at 1026; Dkt. 22-1 at 18-19.

The enforceability-of-judgment factor also weighs in favor of dismissal. Any Mexican judgment between the parties would no doubt be enforceable in Mexico. Ex. B at 14-15. It is not at all clear that a U.S. judgment would be meaningfully enforceable in the United States, however, as Grupo Omnilife is not and is not even alleged to be subject to jurisdiction here. Indeed, a judgment obtained in the United States would almost certainly require foreign enforcement, as all parties are Mexican citizens, Defendants own no property or bank accounts in Texas, and the heart of the dispute is ownership and control over Grupo Omnilife, a Mexican corporation. The necessity of enforcing a judgment by seizing assets located in a foreign country

weighs in favor of dismissal.  *See Gonzales v. P.T. Pelangi Niagra Mitra, Int'l*, 196 F. Supp. 2d 482, 490 (S.D. Tex. 2002).  The fact that the Mexican lawsuits were filed first is another reason to question whether a judgment obtained in this litigation would be enforceable.  Ex. B at 15-16.

That this entire case is unnecessarily duplicative demonstrates why the final private-interest factor—whether Fuentes has sought to use this lawsuit to vex or harass Defendants, as opposed to some legitimate purpose—also weighs in favor of dismissal.  Fuentes and Vergara are already litigating these issues in no fewer than eight cases in Mexico and an international arbitration.  Vergara lacks the necessary minimum contacts with Texas, and Coello Trejo's contacts are non-existent.  There is, quite simply, no reason for Fuentes to pursue this case in El Paso except to obtain some sort of advantage over Vergara in their ongoing Mexican dispute, or in the ongoing arbitration.[9]  Accordingly, all the private interest factors weigh in favor of a Mexican forum, and the case should be dismissed.  *Innovation First Int'l, Inc. v. Zuru, Inc.*, 513 F. App'x 386, 391 (5th Cir. 2013) ("[W]e have held that where the private interest factors as a whole favor dismissal, a court may dismiss a case on forum non conveniens grounds."); *Empresa Lineas Maritimas Argentinas, S.A. v. Schichau-Unterweser, A.G.*, 955 F.2d 368, 376 (5th Cir. 1992) ("Given the availability of an adequate forum in the Netherlands and the balance of private interest factors favoring dismissal, the district court had no need to consider the public interest factors.").

### 2.  The Public Interest Factors Overwhelmingly Favor Dismissal.

Even when the private-interest factors are balanced, the Court can dismiss for *forum non conveniens* "upon finding that retention of jurisdiction would be unduly burdensome to the community, that there is little or no public interest in the dispute or that foreign law will predominate if jurisdiction is retained."  *In re Air Crash*, 821 F.2d at 1165-66.  The public

---

[9] As noted above, the arbitration tribunal has thus far not allowed any discovery.  Ex. A at ¶ 16.

interest factors include (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized controversies resolved at home; (3) the interest in having a the trial of a diversity case in a forum that is familiar with the law that must govern the action; (4) the avoidance of unnecessary problems in conflicts of law, or in application of foreign law; and (5) the unfairness of burdening citizens in an unrelated forum with jury duty.  *Dtex*, 512 F. Supp. 2d at 1020 (quoting *Dickson Marine, Inc. v. Panalpina, Inc.*, 179 F.3d 331, 342 (5th Cir. 1999)). Like the private interest factors, the public interest factors also overwhelmingly weigh in favor of dismissal.

The first public interest factor reflects that a "court's interest in controlling a crowded docket also provides a basis for the court's inherent power to dismiss on grounds of *forum non conveniens*." *Baumgart v. Fairchild Aircraft Corp.*, 981 F.2d at 828.  As the Court undoubtedly knows, the Western District of Texas has the most total of filings of any district within the Fifth Circuit, and the sixth most filings of any district in the United States.    Federal Court Management Statistics—Profiles, June 30, 2015, *available at* www.uscourts.gov/statistics-reports/federal-court-management-statistics-june-2015.    Particularly where there is ongoing litigation in Mexico arising from the same facts, this factor favors dismissal.  *See Devon Energy Prod. Co., L.P. v. GlobalSantaFe S. Am.*, No. H-06-2992, 2007 U.S. Dist. LEXIS 33081, at *29 (S.D. Tex. May 4, 2007) (exploring this factor in the context of a domestic motion to transfer and concluding that "the interests of justice will not be served by the maintenance of two suits arising from the same occurrences in two separate district courts").

The second public interest factor, the local interest in having localized controversies resolved at home, also favors dismissal.  This case involves a Mexican plaintiff and Mexican defendants.  Even assuming for the sake of argument that Fuentes is an El Paso resident now—

even though she is not a U.S. citizen and claims that she and Vergara's young daughters "are residing" in Juarez, Case No. 3:15-cv-00181-KC, Dkt. 154 at 2—she did not move to El Paso until April 9, 2015, after she had already been removed as CEO.   Moreover, the harm complained of involves Fuentes's ouster as CEO of Grupo Omnilife, a large Mexican corporation that employs more than 3000 employees (most of whom reside in Mexico), and Mexican law will govern the dispute.[10]   Ex. B at 9-14; Dkt. 22-1 at 13, 17.   "Therefore, the citizens of this district and of the United states as a whole have little interest in the outcome of this case. Moreover, because Mexican law applies, the decision in this case would have no precedential impact in the United States."   *Seguros Comercial Ams. S.A. De C.V. v. Am. President Lines*, 933 F. Supp. 1301, 1314 (S.D. Tex. 1996).   Furthermore, in addition to the Grupo Omnilife employees, who may be affected by this litigation and are no doubt interested in its outcome,   the Mexican public has shown a great deal of interest in the dispute between Vergara and Fuentes, another fact demonstrating there is strong interest in Mexico in resolving this controversy there.   *See* Case 3:15-cv-00181-KC, Dkt. 105 at 10; Ex. A at ¶ 24; Ex. B at 15; Dkt. 16 at 13; *Alcaraz Martinez v. White*, 492 F. Supp. 2d 1186, 1192 (N.D. Cal. 2007).   This factor weighs in favor of dismissal.

The next two factors, the interest in having the trial in a forum that is familiar with the law that must govern the action, and the avoidance of unnecessary problems in conflicts of law or in application of foreign law, also point toward Mexico.   Fuentes claims that Vergara "intended to coerce Fuentes into relinquishing her shares in Grupo Omnilife by unilaterally

---

[10] Although Fuentes's complaint also focuses on Omnilife USA, Fuentes is not a shareholder in Omnilife USA, has not named Omnilife USA as a party, and cannot obtain the relief she seeks regarding Omnilife USA.  *See generally* Dkt. 16; *see also* Dkt. 22 at 53-56.  Moreover, Omnilife USA is only one of thirty wholly-owned or almost wholly-owned subsidiaries of Grupo Omnilife.  Ex. A at ¶ 3.  Fuentes's allegations about Omnilife USA do not create either a localized controversy or a local interest in resolving this dispute in El Paso.  *See Reyno*, 454 U.S. at 261 (holding that "[t]he American interest in this accident is simply not sufficient to justify the enormous commitment of judicial time and resources that would inevitably be required if the case were to be tried here," even where U.S. companies were defendants).

ousting her from Grupo Omnilife, taking complete control of Grupo Omnilife and all of its subsidiaries, including Omnilife USA;" that Vergara initiated this plan by "improperly" convening a meeting of the shareholders of Grupo Omnilife in April 2015; and that during the meeting in Mexico "Vergara took unauthorized and unlawful action against Fuentes, including ousting her as CEO of Grupo Omnilife." Dkt. 16 at 1-2. Whether the April 2015 meeting was properly convened and whether Fuentes's ouster was authorized and lawful are questions that will require consideration of Grupo Omnilife's bylaws, the Mexican Commercial Code, and the March 27, 2015 order of the Tenth Commercial Court enjoining Fuentes from participating in Grupo Omnilife's business. Ex. B at 9-14. In other words, they are questions of Mexican law. *Id.*; *see also In re Koreag, Controle et Revision S.A.*, 961 F.2d 341, 350 (2d Cir. 1992) ("In general, the federal common law choice-of-law rule is to apply the law of the jurisdiction having the greatest interest in the litigation."). Fuentes's own pleadings in Mexico argue that the April 3 meeting violated Mexican law. *See, e.g.,* B-8 at 4. "The courts of Mexico have far more institutional competency in the application of their own law than does this Court." *Seguros Comercial*, 933 F. Supp. at 1314.

Furthermore, the Mexican courts are already in the process of deciding these questions. In Case 891, Vergara is seeking the separation of Fuentes as a shareholder of Grupo Omnilife, and the court enjoined Fuentes from taking any action on behalf of Grupo Omnilife. Ex. A at ¶¶ 4-7; Exs. B-2, B-3 and B-4. The injunction is still effective. Ex. A at ¶ 7. The April shareholders' meeting in which Fuentes was removed as CEO of Grupo Omnilife and from her position with Omnilife USA directly followed the injunction, and it is Vergara's position that the injunction allowed the April meeting to be called and the actions taken at the meeting. *See id.* In Case 1328, Vergara is seeking a declaration of the validity and enforceability of the April 3

shareholders' meeting, and a corresponding declaration of the nullity of the February 6 meeting. Ex. A at ¶¶ 10-12; Ex. B-4.  Fuentes's answer along with her complaint in Case 579 seeks the opposite relief, as it directly challenges the lawfulness of the April meeting in which she was removed as CEO and assert the validity of the February 6 meeting.  Ex. A at ¶¶ 10-12, 15; Exs. B-5, B-8.  If the Mexican courts agree with Vergara and determine that the April 3 meeting and actions taken therein were lawful, then they cannot possibly be unlawful for RICO purposes.  *See* Ex. B at 9-16.  A contrary decision from this Court would intrude on the sovereignty of Mexico and create an unnecessary and impermissible conflict.

The final factor, the unfairness of burdening citizens in an unrelated forum with jury duty, also points definitively toward Mexico.  "Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation."  *Gulf Oil*, 330 U.S. at 509-10.  The only connections between El Paso and this lawsuit are that Fuentes chose to move here after her personal and professional relationship with Vergara soured, and that one of Grupo Omnilife's thirty subsidiaries happens to be in Texas.  These tenuous connections do not justify imposing the burden of any jury duty on the people of El Paso.  *See City of New Orleans Emples. Ret. Sys. v. Hayward*, 508 F. App'x 293, 300 (5th Cir. 2013) (affirming FNC dismissal where the Texas jury would have had "to delve deeply into whether a group of current and former BP officers and directors, headquartered in England, properly governed an English corporation . . . and decide the facts with reference to standards set forth by the U.K. Parliament.").  It would be particularly unfair to burden the citizens of Texas with jury duty in this trial, which given the number of issues and witnesses who would need translators, among other things, is likely to take weeks.

### III.  Conclusion and Prayer

For these reasons, Defendants Jorge Carlos Vergara Madrigal and Javier Coello-Trejo respectfully request that the Court grant this motion to dismiss for *forum non conveniens* and dismiss Fuentes's claims.  Defendants further request all other relief to which they may be entitled.

Respectfully submitted,

**WEISBART SPRINGER HAYES LLP**
212 Lavaca Street, Suite 200
Austin, Texas  78701
512.652.5780
512.682.2074 fax

By:  /s/ Geoffrey D. Weisbart
      Geoffrey D. Weisbart
      State Bar No. 21102645
      gweisbart@wshllp.com
      Julie A. Springer
      State Bar No. 18966770
      jspringer@wshllp.com
      Sara E. Janes
      State Bar No. 24056551
      sjanes@wshllp.com
      Mia A. Storm
      State Bar No. 24078121
      mstorm@wshllp.com

**ATTORNEYS FOR DEFENDANT JORGE CARLOS VERGARA MADRIGAL**

**ROBLES, BRACKEN & HUGHES**
310 N. Mesa Street, Suite 700
El Paso, Texas  79901
915.544.1144
915.544.1288 fax

By:  /s/ Ruben S. Robles
        Ruben S. Robles
        State Bar No. 17118400
        rrobles@rbch.net

**ATTORNEY FOR DEFENDANT JAVIER
COELLO-TREJO**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing document has been forwarded to all counsel of record herein by way of:

☐ U.S. Mail, First Class
☐ Certified Mail
☐ Facsimile
☐ Federal Express
☐ Hand Delivery
☒ ECF (electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants)

on this 29th day of February, 2016, to wit:

Carlos F. Concepcion
Ricardo Hugo Puente
JONES DAY
600 Brickell Avenue, 33rd Fl.
Miami, Florida 33131
305.714.9700
305.714.9799 fax
cconcepcion@jonesday.com
rpuente@jonesday.com

Sidney Smith McClung
JONES DAY
2727 North Harwood Street
Dallas, Texas  75201-1515
214.969.5219
214.969.5100 fax
smcclung@jonesday.com

**ATTORNEYS FOR PLAINTIFF**

/s/ Geoffrey D. Weisbart
Geoffrey D. Weisbart

---